IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| FRANCIS CAMILLO, M.D.,<br><br>    Plaintiff,<br><br><br>v.<br><br>CAMPBELL CLINIC, P.C., and<br>CATHERINE OLINGER,<br><br>    Defendants. | No. 2:19-cv-02876-SHM-atc<br><br>JURY DEMANDED |

**ORDER GRANTING IN PART AND DENYING IN PART CAMPBELL CLINIC'S MOTION TO DISMISS AND GRANTING OLINGER'S MOTION TO DISMISS**

Dr. Francis Camillo ("Plaintiff") brings this action against Defendants Campbell Clinic, P.C. ("Campbell Clinic") and Dr. Catherine Olinger ("Olinger") under the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 (1990) ("ADA") and Tennessee law. Before the Court are four motions. The first is Campbell Clinic's March 26, 2020 first motion to dismiss. (D.E. No. 17.) The second is Olinger's March 26, 2020 first motion to dismiss. (D.E. No. 18.) The third is Campbell Clinic's April 21, 2020 second motion to dismiss, styled Motion for Partial Dismissal of Plaintiff's Amended Complaint. (D.E. No. 21.) The fourth is Olinger's April 21, 2020 second motion to dismiss, styled Motion to Dismiss for Lack of Jurisdiction. (D.E. No.

22.) Defendants' first motions to dismiss, (D.E. Nos. 17, 18), were filed before the Amended Complaint, (D.E. No. 20), and are DENIED AS MOOT. Campbell Clinic's second motion to dismiss, (D.E. No. 21), is GRANTED IN PART and DENIED IN PART. Olinger's second motion to dismiss, (D.E. No. 22), is GRANTED.

## I.  Background

On December 20, 2019, Plaintiff filed his Complaint against Campbell Clinic and Olinger. (D.E. No. 1.) An Amended Complaint was filed on April 7, 2020. (D.E. Nos. 19-20.) The Amended Complaint alleges three claims under the ADA against Campbell Clinic: discrimination because of an actual disability, denial of a reasonable accommodation, and retaliation for taking an ADA accommodation. (D.E. No. 20 ¶ 35.) The Amended Complaint alleges the following state law claims against Campbell Clinic: intentional infliction of emotional distress, negligent infliction of emotional distress, tortious interference with contract, and civil conspiracy. (Id. ¶¶ 41-51, 60-65.) The Amended Complaint alleges the following state law claims against Olinger: defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, tortious interference with contract, tortious interference with business relations, and civil conspiracy. (Id. ¶¶ 37-65.) For purposes of the motions to dismiss, the facts are taken from the Amended Complaint.

In 2017, Plaintiff was diagnosed with cancer that required treatments with side effects, including mood related effects. (D.E. No. 20 ¶¶ 13-15.) He was a surgeon at Campbell Clinic and was given a reasonable accommodation that allowed him to continue working while receiving his cancer treatment. (Id. ¶¶ 7, 15.)

On March 30, 2018, Plaintiff had returned to work full-time. (Id. ¶ 17.) Olinger was then a resident physician employed by the University of Tennessee Health Science Center and an employee of the State of Tennessee. (D.E. No. 22-1 at 210.) On March 30, Plaintiff ordered Olinger to place a patient in a halo. (D.E. No. 20 ¶ 17.) Olinger disagreed with that order. (Id.) There was a discussion about the order, and the patient was eventually placed in the halo. (Id. ¶¶ 18-19.)

On April 30, 2018, Olinger sent an email to Dr. Thomas (Quin) Throckmorton at Campbell Clinic that said Plaintiff had used a sexist slur when discussing the placement of the halo with her. (D.E. No. 20 Attachment A at 180.) Throckmorton forwarded the email to someone else at Campbell Clinic. (See id.) Plaintiff alleges that Olinger's email accusing him of using the slur was knowingly false. (D.E. No. 20 ¶ 23.) He alleges that the email was part of a "common design" among the other doctors at Campbell Clinic and Olinger to create a pretense for firing him. (Id. ¶¶ 21-23.)

Campbell Clinic said that, based on Olinger's accusation, it would talk to Plaintiff about temper control. (Id. ¶ 26.) Plaintiff requested an accommodation of anger management. (Id. ¶ 28.) In June 2018, Campbell Clinic ended Plaintiff's employment with the clinic. (Id. ¶ 29.)

Plaintiff timely filed state law claims against Olinger in state court. (D.E. No. 23 at 244 n.3.) A notice of voluntary dismissal was filed in state court on December 20, 2019. (D.E. No. 20 ¶ 33 n.3.) The order dismissing the state court action was entered March 24, 2020. (D.E. No. 22-1 at 221 n.5.)

Plaintiff's initial complaint in this Court was filed December 20, 2019. (D.E. No. 1.) Campbell Clinic and Olinger filed motions to dismiss that complaint on March 26, 2020. (D.E. Nos. 17-18.) The Amended Complaint was filed April 7, 2020. (D.E. Nos. 19-20.) Campbell Clinic and Olinger filed subsequent motions to dismiss on April 21, 2020. (D.E. Nos. 21-22.)

The motions to dismiss assert several defenses. Campbell Clinic seeks partial dismissal of the Amended Complaint. (D.E. No. 21.) It maintains that the Amended Complaint fails to state a denial-of-reasonable-accommodation claim and fails to state any state law claims against it. (Id.) Olinger maintains that the Court lacks subject matter jurisdiction over the state law claims against her. (D.E. No. 22.) She contends that she is immune under the Eleventh Amendment and various statutes. (Id.)

4

She contends that the statutes of limitations have elapsed for most the state law claims, and that the Amended Complaint fails to state any state law claims against her. (Id.)

## II. Jurisdiction

### A. ADA Claims

The Court has federal question jurisdiction over Plaintiff's ADA claims under 28 U.S.C. § 1331. Plaintiff's ADA claims arise under the laws of the United States.

### B. State Law Claims

#### 1.   Supplemental Jurisdiction

The Court has supplemental jurisdiction over Plaintiff's state law claims against Campbell Clinic and Olinger pursuant to 28 U.S.C. § 1367. Section 1367 provides that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367; see also Wisc. Dept. of Corr. v. Schacht, 524 U.S. 381, 387 (1998). "Claims form part of the same case or controversy when they 'derive from a common nucleus of operative fact.'" Harper v. AutoAlliance Int'l, Inc., 392 F.3d 195, 209 (6th Cir. 2004) (quoting Ahearn v. Charter Township of Bloomfield, 100 F.3d 451, 454-55 (6th Cir. 1996)). Section 1367 also provides that the

district court may refuse to exercise jurisdiction over a claim if "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." Id.

Although Olinger asserts without argument that "Plaintiff's allegations against Dr. Olinger are distinct from those against Campbell Clinic," and that "the state court claims against both Defendants substantially predominate over the federal court claims against Campbell Clinic," (D.E. No. 22-1 at 211-212), the claims arise from a "common nucleus of operative fact." See Schafer v. Sea-Land Service, Inc., 11 F. App'x 951, 953 (9th Cir. 2001) (holding that, where defamation claim was based on assertions that the statements were made as part of a conspiracy to have employee fired, all claims derived from a common nucleus of operative fact). The Court has supplemental jurisdiction over the state law claims.

### 2. Sovereign Immunity

Olinger argues that she is immune under the Eleventh Amendment from suit against her in her official capacity. (D.E. No. 22-1 at 212-15.) Plaintiff counters that his suit is brought against Olinger in her individual capacity and that the Eleventh Amendment does not preclude it. (D.E. No. 23 at 240-41.)

Pennhurst II states the standard. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89 (1984). First, whether a suit is brought against a state official in her individual capacity

depends not on the label in the pleadings but on the "functional reality" surrounding the action. In re Ohio Execution Protocol Litigation, 709 F. App'x 779, 783-84 (6th Cir. 2017) (quoting Pennhurst, 465 U.S. at 112 n. 22) ("Whether one seeks relief against the officer in [her] official capacity (and hence the sovereign), the Court explained, 'turns on whether the defendant state official was empowered to do what [s]he did, i.e., whether, . . . [the challenged action] was action within the scope of [her] authority.'"). Second, where the relief sought would have no impact on the state, the Eleventh Amendment does not bar it. See Pennhurst, 465 U.S. at 117 ("The reasoning of our recent decisions on sovereign immunity thus leads to the conclusion that a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when—as here—the relief sought and ordered has an impact directly on the State itself.").

Although Plaintiff cannot avoid Eleventh Amendment preclusion merely by labeling its action a suit against Olinger in her individual capacity, Plaintiff seeks money damages against Olinger personally, not against the state. Plaintiff's suit is not barred by the Eleventh Amendment. See Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d 508, 531-32 (1st Cir. 2009) ("[N]othing in our case law permits us to read Pennhurst as calling into doubt the authority of federal courts to award relief on supplemental state law claims against state officials where the

monetary relief is not sought from the state's treasury. . . .
As damages in this case are being sought from and awarded against
Contreras and Juarbe in their personal capacities only, the
Eleventh Amendment provides them no defense."); Pena v. Gardner,
976 F.2d 469, 473-74 (9th Cir. 1992) (citing Paul M. Bator et
al., Hart and Wechsler's The Federal Courts and The Federal
System 1203 (3d ed. 1988)) ("Pennhurst II appears to permit a
suit under state law against a state official for damages to be
paid by the officer personally rather than by the state").

### C. Statutory Immunity

#### 1.   Claims Commission Act

Plaintiff brings state law claims of defamation,
intentional infliction of emotional distress, negligent
infliction of emotional distress, tortious interference with
contract, tortious interference with business relations, and
civil conspiracy against Olinger. Olinger argues she is
absolutely immune under the Claims Commission Act. Tenn. Code
Ann. § 9-8-307(h); (D.E. No. 22-1 at 215.) That Act provides
that "[s]tate officers and employees are absolutely immune from
liability for acts or omissions within the scope of the officer's
or employee's office or employment, except for willful,
malicious, or criminal acts or omissions or for acts or omissions
done for personal gain." Tenn. Code Ann. § 9-8-307(h). "In order
to be held liable for willful and malicious conduct, one must

act intentionally, deliberately, and purposefully." Cagle v. United States, 937 F.2d 1073, 1076-77 (6th Cir. 1991). "Willful misconduct requires more than negligence; it suggests 'deliberation and intentional wrong-doing.'" Id. at 1077 (quoting Nashville, C. & S. L. R. Co. v. Wright, 147 Tenn. 619, 623 (1923)). Plaintiff argues that the Amended Complaint alleges Olinger's action was malicious and intentional and was therefore outside the scope of her employment. (D.E. No. 23 at 242-43.)

Plaintiff's claim for negligent infliction of emotional distress against Olinger is DISMISSED. (See D.E. No. 22-1 at 218 n.2.) Negligent action is not malicious. See Horn-Brichetto v. Smith, No. 3:17-CV-163, 2019 WL 921454, at *13 (E.D. Tenn. Feb. 25, 2019) (dismissing a negligent infliction of emotional distress claim under Tennessee law because, unless plaintiff alleged more than negligence, defendants were immune).

Olinger relies on Horn-Brichetto for the proposition that defamation is within the scope of employment of a state official. (See D.E. No. 22-1 at 216-18; D.E. No. 25 at 265-67.) Even if that were true, Plaintiff argues, Olinger's action was outside the scope of her employment and was malicious and intentional. (D.E. No. 23 at 242-43.) The Amended Complaint alleges a conspiracy during which Olinger intentionally made a false statement about Plaintiff to improve her job prospects at

Campbell Clinic, thereby creating a pretext for Campbell Clinic to fire Plaintiff. (D.E. No. 20 at ¶¶ 21, 31.)

Allegations of malicious actions are sufficient to overcome absolute immunity. See Keele v. Davis, No. 4:05-cv-105, 2006 WL 8442672, at *5 (E.D. Tenn. July 18, 2006) ("With respect to civil conspiracy, there is no inherent maliciousness or willfulness. Plaintiff's complaint, however, does allege that Taylor's conduct associated with the civil conspiracy was 'malicious.'"); cf. Horn-Brichetto, 2019 WL 921454, at *14 ("[T]his single generalized allegation, unsupported by any factual assertions, is far from sufficient to show that the defendants acted willfully or maliciously."). Because the Amended Complaint sufficiently alleges malicious and intentional action, Olinger is entitled to absolute immunity under the Claims Commission Act only on Plaintiff's claim for negligent infliction of emotional distress.

### 2.   Health Care Improvement Statutes

Olinger is not immune based on any health care improvement statute. Participants in a professional review action may be immune under the Health Care Quality Improvement Act ("HCQIA"). 42 U.S.C. § 11111(a). Olinger summarizes a definition of professional review action based on the statutory definitions of "professional review action," "professional review activity," and "professional review body," but makes no argument that her

10

allegedly false email was sent as part of a professional review action or activity. (D.E. No. 22-1 at 218 n.3, 218); see 42 U.S.C. § 11151(9)-(11). The Amended Complaint alleges that the email was not sent as part of a professional review action or activity. (D.E. No. 20 ¶ 22.) Plaintiff correctly suggests that this allegation alone is sufficient to find that Olinger is not immune under the HCQIA for purposes of her motion to dismiss. (See D.E. 23 at 243-44.)

Even assuming that the course of events from sending the email through Plaintiff's firing could be considered a professional review action or activity, that action or activity would not satisfy the requirements of 42 U.S.C. § 11112(a) and would not trigger statutory immunity under § 11111(a). To decide whether the requirements of § 11112(a)(2) are met, the Court must consider "whether the 'totality of the process' leading up to the professional review action evinced a reasonable effort to obtain the facts of the matter." Meyers v. Columbia/HCA Healthcare Corp., 341 F.3d 461, 469 (6th Cir. 2003) (quoting Mathews v. Lancaster Gen. Hosp., 87 F.3d 624, 637 (3d Cir. 1996)). Although "bad faith is immaterial," Bryan v. James E. Holmes Reg. Med. Ctr., 33 F.3d 1318, 1335 (11th Cir. 1994), the allegations here go beyond bias or animosity. The Amended Complaint alleges that Olinger and Campbell Clinic conspired to base the entire process by which Plaintiff was fired on an

11

intentionally fabricated incident. (D.E. No. 20 ¶ 21.) The totality of that alleged process does not evince a reasonable effort to obtain the facts. Olinger is not immune under the HCQIA.

Olinger is not immune under the Tennessee Patient Safety and Quality Improvement Act. Tenn. Code Ann. § 68-11-272. To qualify for immunity under that Act, the report must be made to a quality improvement committee ("QIC"). See Tenn. Code Ann. § 68-11-272(d). The Amended Complaint alleges Olinger emailed Throckmorton and specifically alleges that Olinger did not report the allegedly fabricated incident to a QIC. (D.E. No. 20 ¶ 22.) Olinger is not immune.

## III. Standard of Review

Rule 12(b)(6) provides for the dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A Rule 12(b)(6) motion permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing Nishiyama v. Dickson Cty., 814 F.2d 277, 279 (6th Cir. 1987)). A motion to dismiss tests only whether the plaintiff has pled a cognizable claim and allows the court to dismiss meritless cases that would waste judicial resources and result

in unnecessary discovery. <u>See</u> <u>Brown v. City of Memphis</u>, 440 F. Supp. 2d 868, 872 (W.D. Tenn. 2006).

"To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient to state a claim to relief that is plausible on its face." <u>Cooper Butt ex rel. Q.T.R. v. Barr</u>, 954 F.3d 901, 904 (6th Cir. 2020) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Twombly</u>, 550 U.S. at 556). The Court considers the plaintiff's complaint in the light most favorable to the plaintiff. <u>Ryan v. Blackwell</u>, 979 F.3d 519, 525 (6th Cir. 2020) (citing <u>Ziegler v. IBP Hog Mkt., Inc.</u>, 249 F.3d 509, 512 (6th Cir. 2001)). The court accepts as true all factual allegations but does not accept legal conclusions or unwarranted factual inferences as true. <u>Theile v. Michigan</u>, 891 F.3d 240, 243 (6th Cir. 2018). "The plaintiff must present a facially plausible complaint asserting more than bare legal conclusions." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556; <u>Iqbal</u>, 556 U.S. at 677-678).

## IV.  Analysis

### A. Initial Motions to Dismiss

When a plaintiff files an amended complaint, the new complaint supersedes all previous complaints and controls the case from that point forward. Parry v. Mohawk Motors of Mich., Inc., 236 F.3d 299, 306 (6th Cir. 2000) (citing In re Atlas Van Lines, Inc., 209 F.3d 1064, 1067 (8th Cir. 2000)). The amended complaint is the only "legally operative complaint." Id. A motion to dismiss a complaint that is superseded by an amended complaint is moot. See ABB, Inc. v. Reed City Power Line Supply Co., No. 1:07-cv-420, 2007 WL 2713731, at *1 (W.D. Mich. Sept. 18, 2007) (collecting cases).

Campbell Clinic and Olinger filed their initial motions to dismiss before the filing of the Amended Complaint. (See D.E. Nos. 17-20.) The initial motions to dismiss are DENIED AS MOOT.

### B. Denial-of-Reasonable-Accommodation Claim

Campbell Clinic argues that Plaintiff's denial-of-reasonable-accommodation claim under the ADA should be dismissed for two reasons. First, anger management could not have been an accommodation for Plaintiff's cancer because his treatments had ended. (D.E. No. 21-1 at 187-89.) Second, the request for accommodation was untimely because it came after the terminable conduct. (D.E. No. 21-1 at 189-91.) Campbell Clinic's arguments rely on the assumption that the interactive process to determine

14

reasonable accommodations under the ADA, triggered by Plaintiff's initial accommodation requests alleged in the Amended Complaint, (D.E. No. 20 ¶ 14), ended when those requests were granted, (D.E. No. 20 ¶ 15).

Both arguments fail because Campbell Clinic was under an ongoing duty to engage in an interactive process with Plaintiff about accommodations for his cancer treatments. The Amended Complaint alleges that the side effects of the cancer treatments included mood alterations that could last for months and that Campbell Clinic agreed to an accommodation for those effects. (D.E. No. 20 ¶¶ 13-15); see Fisher v. Nissan N. Am., Inc., 951 F.3d 409, 421-22 (6th Cir. 2020) (noting that early in the interactive process the employer "was participating in the interactive process in good faith"). The interactive process is ongoing and is not resolved by the first accommodation if that accommodation proves insufficient. See Fisher, 951 F.3d at 414-15, 422 (describing the months' long process of employee exhibiting behavior that warranted discipline and his subsequent requests for accommodation that went unheeded); Humphrey v. Memorial Hospitals Ass'n, 239 F.3d 1128, 1138 (9th Cir. 2001) ("[T]he employer's obligation to engage in the interactive process extends beyond the first attempt at accommodation and continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is

15

failing and further accommodation is needed"). Plaintiff's request for a reasonable accommodation of anger management for a disability with treatment-related side effects about which Campbell Clinic was aware "implicated [Campbell Clinic]'s continuing mandatory duty of good-faith participation in the interactive process."   Fisher, 951 F.3d at 422.

The parties disagree about whether an employer must consider an accommodation request made after the terminable conduct has occurred. (See D.E. No. 21-1 at 189-91; D.E. No 24 at 260-63.) That question is not germane because any potentially terminable conduct in this case occurred while the interactive process was ongoing. The cases Defendant cites are distinguishable because in none of them was the interactive process ongoing at the time of the terminable conduct. See Yarberry v. Gregg Appliances, Inc., 625 F. App'x 729, 741-42 (6th Cir. 2015); Parsons v. Auto Club Group, 565 F. App'x 446, 448-49 (6th Cir. 2014); Messenheimer v. Coastal Pet Prods., Inc., No. 5:17-cv-738, 2018 WL 3609488, at *8-*9 (N.D. Ohio July 27, 2018).

Campbell Clinic's motion to dismiss the denial-of-reasonable-accommodation claim under the ADA is DENIED.

### C. State Law Claims

#### 1. Campbell Clinic

The parties do not dispute that the state law claims against Campbell Clinic should be dismissed. (See D.E. No. 24 at 264.) The state law claims against Campbell Clinic are DISMISSED.

#### 2. Olinger

##### a. Statutes of Limitations

The relevant statutes of limitations for Plaintiff's defamation, intentional infliction of emotional distress, tortious interference with business relations, and civil conspiracy claims are one year. Blount v. D. Canale Bevs. Inc., No. 02-2813-V, 2003 WL 22890339, at *6 (W.D. Tenn. July 23, 2003) (defamation); Evans v. Walgreen Co., 813 F. Supp. 2d 897, 938-39 (W.D. Tenn. 2011) (intentional infliction of emotional distress); Lilly v. City of Clarksville, No. 3-10-1178, 2012 WL 1514875, at *1 (M.D. Tenn. May, 1 2012) (tortious interference with business relations); Oliver v. Paris, No. 1:05-cv-021, 2005 U.S. Dist. LEXIS 34034, at *23 (E.D. Tenn. Sept. 12, 2005) (noting that the statute of limitations applicable to the underlying tort applies to civil conspiracy). Olinger argues that more that one year had elapsed before this suit was filed. (D.E. No. 22-1 at 221.)

Plaintiff relies on the Tennessee savings statute, Tenn. Code Ann. § 28-1-105(a), to argue that the claims are timely.

(See D.E. No. 23 at 244-45.) Section 28-1-105(a) provides for a one-year extension of the statute of limitations where "the judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action." Tenn. Code Ann. § 28-1-105(a). Rule 41.01(3) of the Tennessee Rules of Civil Procedure provides that a voluntary nonsuit dismissing an action is such a judgment or decree, where it is followed "by an order of voluntary dismissal signed by the court and entered by the clerk." Tenn. R. Civ. P. 41.01(3). Rule 41.01(3) provides that "[t]he date of entry of the order will govern the running of pertinent time periods." Id.

The savings statute does not save Plaintiff's claims that are barred by the statutes of limitations. Plaintiff filed this suit on December 20, 2019, before the state clerk had entered the order of voluntary dismissal on March 24, 2020. Therefore, the one-year period provided for by the savings statute had not yet begun to run. Plaintiff did not file within one year of March 24, 2020. See Hunley v. Sandvik Mining and Construction USA, LLC, No. 3:15-cv-394, 2016 WL 8928573, at *3-*4 (E.D. Tenn. June 14, 2016) ("While this rule may seem harsh in application—precluding a suit as time-barred because it was filed too early—it is well-established in Tennessee."); Lind v. Beaman Dodge, Inc., 356 S.W.3d 889, 895 (Tenn. 2011) ("The 2004 Advisory Commission Comments indicate that the one-year saving statute

under Tennessee Code Annotated section 28-1-105 (2000) begins with the filing of the order granting nonsuit."); Evans v. Perkey, 647 S.W.2d 636, 641 (Tenn. Ct. App. 1982) ("We conclude the one-year statute of limitations ran from the date of the entry of the order of the court and not from the date of filing the notice of nonsuit.").

In Brooks v. Paccar, Inc., the Tennessee Special Workers' Compensation Appeals Panel upheld the Circuit Court's dismissal of a case filed before the savings statute's one-year period had begun. Brooks v. Paccar, Inc., No. M2009-00602-WC-R3-WC, 2010 WL 454811, at *1-*3 (Tenn. Workers' Comp. Panel Feb. 10, 2010). The employee had filed an action in Chancery Court. Id. at *1. He filed a notice of nonsuit of the Chancery Court action and re-filed his action in the Circuit Court on the same day. Id. The Chancery Court entered an order of voluntary dismissal several days later. Id. The employer filed a motion to dismiss in the Circuit Court, arguing that the Chancery Court action was pending when the Circuit Court action was filed and that filing was invalid. Id. The Special Workers' Compensation Appeals Panel concluded that Tennessee Rule of Civil Procedure 41.01(3) controlled and that the Circuit Court had correctly dismissed the action because it was filed before the clerk had entered the order of dismissal in Chancery. Id. at *3.

Because Plaintiff failed to file within one year of the date the state clerk entered the order of voluntary dismissal, Plaintiff's claims for defamation, intentional infliction of emotional distress, tortious interference with business relations, and civil conspiracy are DISMISSED as untimely.

### b. Tortious Interference with Contract

The remaining state law claim of tortious interference with contract has seven elements: "(1) that a legal contract existed; (2) that the defendant was aware of the contract; (3) that the defendant intended to induce a breach of that contract; (4) that the defendant acted with malice; (5) that a breach of the contract occurred; (6) that the breach was a proximate result of the defendant's conduct; and (7) that the breach injured the plaintiff." Givens v. Mullikin ex rel. Estate of McElwaney, 75 S.W.3d 383, 405 (Tenn. 2002).

Olinger argues that the allegations of the Amended Complaint do not establish the fifth element, breach of the contract. (D.E. No. 22-1 at 227.) The Amended Complaint alleges that the employment relationship between Campbell Clinic and Plaintiff was terminated, but ending the employment relationship does not establish that Plaintiff's employment contract was breached. (See D.E. No. 20 ¶ 50.) The allegations of the Amended Complaint are insufficient to establish that "voting [Plaintiff] out of the practice" was a breach of his employment contract. (Id.)

Because the Amended Complaint does not allege that Plaintiff's employment contract was breached, the claim for tortious interference with contract is DISMISSED.

## V. Conclusion

The first motions to dismiss filed by Campbell Clinic and Olinger are DENIED AS MOOT. Campbell Clinic's second motion to dismiss is GRANTED IN PART and DENIED IN PART. Olinger's second motion to dismiss is GRANTED.

SO ORDERED this ___2d___ day of March, 2021.

*/s/ Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE